UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHANDER KANT,

                Plaintiff,

      -against-

COLUMBIA UNIVERSITY,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

08 Civ. 7476 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        Pro se Plaintiff Chander Kant's initial complaint was filed on August 25, 2008, and alleged that Columbia University breached an oral contract promising him a senior-level, full-time, tenure-track faculty position in its Economics Department. Plaintiff twice amended his complaint, pursuant to orders issued by Chief Judge Preska, who instructed Plaintiff to clarify whether the alleged oral contract met the requirements of New York's statute of frauds.[1]  (Docket Nos. 2 & 4)

        On December 23, 2008, Plaintiff filed his second amended complaint ("SAC"), the version currently before this Court.  (Docket No. 5)  On May 20, 2009, Defendant moved to dismiss, arguing that the oral contract alleged in the SAC is unenforceable under the statute of frauds, because it could not by its own terms be performed within one year.[2]  (Docket No. 12)  In response to this motion, Plaintiff filed a

---

[1] The action was reassigned to this Court on December 30, 2008.

[2] Defendant also argued in its moving papers that Plaintiff's initial complaint was filed two months after the applicable six-year statute of limitations expired.  (Def. MTD Br. at 4)  In its reply papers, however, Defendant withdraws this argument, having determined that Plaintiff's original complaint was received by the Court's Pro Se Office prior to the expiration of the statute of limitations.  (Def. MTD Reply at 1 n.1)

1

motion for leave to file a third amended complaint.  (Docket No. 15)  Defendant opposes Plaintiff's motion on the grounds that the proposed alterations are futile and made in bad faith.  For the reasons stated below, Defendant's motion to dismiss is GRANTED, and Plaintiff's motion for leave to file a third amended complaint is DENIED.

## BACKGROUND

Kant has been employed as an Associate Professor of Economics at Seton Hall University since September 1, 1989.  (SAC ¶ 6)  In January 2001, Kant was designated a visiting scholar in the economics department at Columbia University.  (SAC ¶ 9)  This designation was for a term of one year, from January 26, 2001, through January 25, 2002.  (SAC ¶ 10)  Visiting scholars at Columbia typically receive no compensation and incur no obligations, but Columbia's library, technological, and other research resources are made available to them at no cost.  (SAC ¶ 13)

Kant alleges that when he was appointed as a visiting scholar, the Economics Department chair, Professor Richard Clarida,

> promised Kant that subject to the approval of [the] department's senior faculty, he would be appointed to a senior-level full-time position in the department if he attended weekly research seminars regularly and participated in them.  The appointment will be initially for one year.  During this one year two things will happen: Kant will be considered for tenure, and he will be reappointed for a second year.  If he is not granted tenure, he will be notified of this fact by December 15 of his second year of appointment at Columbia.

(SAC ¶ 14)  Kant argues that this alleged promise constituted an oral contract between him and Columbia University.  (SAC ¶ 15)  The SAC alleges that Kant attended the weekly research seminars for one year and made valuable contributions to the discussions held at each.  (SAC ¶ 16)

The SAC further alleges that in January 2002, the new chair of the economics department, Professor Donald Davis, orally "renewed and restated" Professor Clarida's promises made in January of 2001 (SAC ¶ 17), thus forming a second contract between Columbia and the Defendant. (SAC ¶ 18)

During the same conversation in January 2002, Professor Davis informed Kant that reappointment to a visiting scholar position after an initial one-year term was rare, and that Kant would need a recommendation for such an extension from a senior faculty member before the request could be sent to the University Provost for consideration. (SAC ¶ 19) Professor Ronald Findlay, a chaired professor in the economics department, recommended Kant for reappointment through July 25, 2002, but not for a full second year. (Id.) On February 5, 2002, Columbia's Associate Provost reappointed Kant as a visiting scholar through July 25, 2002. (SAC ¶ 20)

Kant further alleges that in the spring of 2002, the senior faculty of the economics department voted in favor of hiring him to a senior-level position. (SAC ¶ 29) Despite advertised openings for new faculty in both the business school and economics department – which Kant applied for – and Kant's alleged superior qualifications (see SAC ¶¶ 23-25, 27), Professor Davis told Kant on June 6, 2002, that "[a]ll openings for the year have been filled [and that Kant] would not be a likely candidate for future openings." (SAC ¶ 34) On November 13, 2002, Kant learned that the advertised positions for which he had applied had not been filled and that in October 2002, the department had begun advertising again for senior-level positions in the Journal of Economics. (SAC ¶¶ 37-38)

3

**DISCUSSION**

**I.      LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. --, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To meet this standard, the factual allegations must permit the Court, "draw[ing] on its judicial experience and common sense," "to infer more than the mere possibility of misconduct." Id. at 1950. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995), cert. denied, 519 U.S. 808 (1996) (citing Scheuer v. Rhodes, 416 U.S. 232, 235-236 (1974)). On a motion to dismiss, the Court must accept all material facts alleged in the complaint as true, and draw all reasonable inferences in Plaintiff's favor. See EEOC v. Staten Island Sav. Bank, 207 F.3d 144 (2d Cir. 2000); see also Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Krimstock v. Kelly, 306 F.3d 40, 47-48 (2d Cir. 2002). Courts may not, however, accept as true "conclusions of law or unwarranted deductions of fact." First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994), cert. denied, 513 U.S. 1079 (1995) (citations omitted).

Pro se complaints are reviewed under a more lenient standard than that applied to "formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); see also Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir. 1997). Pro se pleadings "must be read liberally and should be interpreted 'to raise the strongest arguments that they suggest.'" Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). Allegations made in a pro

se plaintiff's accompanying memorandum of law, where they are consistent with those in the complaint, may also be considered. See Coakley v. 42nd PCT. Case 458, No. 08 Civ. 6202 (JSR), 2009 WL 3095529, at *3 (S.D.N.Y. Sept. 28, 2009); Donahue v. U.S. Dep't of Justice, 751 F. Supp. 45, 49 (S.D.N.Y. 1990). To avoid dismissal, however, a pro se plaintiff's pleadings must go beyond mere "[c]onclusory allegations or legal conclusions masquerading as factual conclusions." Gebhardt v. Allspect, Inc., 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000) (quoting 2 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 12.34(l)(b) (3d ed. 1997)).

## II. THE ALLEGED ORAL AGREEMENT VIOLATES THE STATUTE OF FRAUDS

Accepting the allegations of the SAC as true, the alleged oral agreement between Kant and Columbia was not to be performed within one year. Accordingly, the agreement violates New York's statute of frauds and is unenforceable.

New York's statute of frauds provides:

Every agreement, promise, or undertaking is void, unless it
or some note or memorandum thereof be in writing, and
subscribed by the party to be charged therewith, or by his
lawful agent, if such agreement, promise or undertaking:

1. By its terms is not to be performed within one year from
the making thereof or the performance of which is not the
be completed before the end of a lifetime.

N.Y. GEN. OBLIG. LAW § 5-701 (McKinney 2009). An employment contract for a term of more than one year is thus unenforceable under the statute of frauds "unless it is memorialized in a writing signed by the party to be charged." Celi v. Canadian Occidental Petroleum, Ltd., 804 F. Supp. 465, 469 (E.D.N.Y. 1992).

Kant alleges that an oral contract was formed when he was promised a senior-level, full-time appointment for two successive one-year terms, subject to (1)

5

approval of the initial appointment by the economics department's senior faculty, and (2) Kant's regular attendance at and participation in weekly research seminars.  (SAC ¶¶ 14, 17)  Kant asserts that reappointment after the first year was mandatory if his initial appointment was approved and he met his seminar obligations.  (See SAC ¶ 14 ("During [the initial year of appointment] two things will happen:  Kant will be considered for tenure, and he will be reappointed for a second year."))

The alleged oral contract – although phrased in one-year increments – provides for performance over a two-year period, and thus violates the statute of frauds, rendering it unenforceable.  See Bykofsky v. Hess, 107 A.D.2d 779, 782 (2d Dep't 1985) (holding an oral promise "to reappoint plaintiff for two successive one-year terms unenforceable pursuant to the Statute of Frauds") (collecting cases); Ginsberg v. Fairfield-Noble Corp., 81 A.D.2d 318 (1st Dep't 1981) ("oral employment agreement for a period of one year to commence at a time subsequent to the making of the agreement is unenforceable against a plea of the Statute of Frauds"); Whitehall v. Maimonides School, 53 A.D.2d 568 (1st Dep't 1976) (finding oral employment agreement unenforceable under the statute of frauds where the contract "was made on July 6, 1973, with performance to commence on August 1, 1973 and [to] be completed on July 31, 1974"); see also Andruff v. World Travel Holdings, PLC, No. 01 Civ. 10717 (LBS), 2002 WL 1033811 (S.D.N.Y. May 22, 2002) (granting summary judgment for defendant because unwritten two-year contract violated Statute of Frauds).

While Kant alleges that his oral contract was "renewed and restated" by Professor Davis in January 2002 (SAC ¶ 18), this confirmation of the original terms of the alleged January 2001 oral agreement by a second Columbia official in January 2002

does not alter the fact that the January 2001 agreement provided for performance over two years.

### III. PLAINTIFF'S REQUEST FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT

Kant has moved for leave to file a third amended complaint, which adds a claim for promissory estoppel and alters various factual allegations made in the SAC. (Pltf. Br. at 1-2)  Defendant argues that Kant's request should be denied on the basis of futility, because "even with its altered allegations" the third amended complaint "still warrants dismissal."  Defendant also argues that the request for leave should be denied because Kant's new factual allegations are made in bad faith.  (Def. Opp. at 2-3)

Under the Federal Rules of Civil Procedure, leave to amend should be "freely give[n] . . . [when] justice so requires."  Fed. R. Civ. P. 15(a)(2).  District courts "ha[ve] broad discretion to decide whether to grant leave to amend."  Joblove v. Barr Labs. Inc. (In re Tamoxifen Citrate Antitrust Litig.), 429 F.3d 370, 404 (2d Cir. 2005).  Although leave to amend should be liberally granted, it may properly be denied in cases of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2007) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).  "[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied."  Hayden v. County of Nassau, 180 F.3d 42, 53 (2d Cir. 1999).

Here, the Court will deny leave to amend because (1) amendment would be futile; and (2) Plaintiff's proposed third amended complaint presents new facts and allegations so contradictory to his earlier pleadings as to indicate bad faith.

### A.     Futility of Amendment

The proposed third amended complaint adds a claim for promissory estoppel.  (TAC ¶ 5)  In New York, a claim for promissory estoppel must contain three elements:  "a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made, and an injury sustained by the party asserting the estoppel by reason of the reliance."  Cyberchron Corp. v. Calldata Sys. Dev., 47 F.3d 39, 44 (2d Cir. 1995) (quoting Arcadian Phosphates, Inc. v. Arcadian Corp., 884 F.2d 69, 73 (2d Cir. 1989)); see also Braun v. CMGI, Inc., 64 Fed. Appx. 301, 304 (2d Cir. 2003).  A plaintiff may utilize the doctrine of promissory estoppel in two situations:  (1) to enforce a "promise in the absence of bargained for consideration"; and (2) "to provide relief to a party where the contract is rendered unenforceable by operation of the Statute of Frauds."  Merex A.G. v. Fairchild Weston Sys., 29 F.3d 821, 824 (2d Cir. 1994).

Where an enforceable contract exists, the doctrine of promissory estoppel is inapplicable and a plaintiff cannot recover under this theory.  Holmes v. Lorch, 329 F. Supp. 2d 516, 527 (S.D.N.Y. 2004) (promissory estoppel is "a rule applicable only in the absence of an enforceable contract") (citation omitted).  "To invoke the power that equity possesses to trump the Statute of Frauds," on the other hand, a "plaintiff must demonstrate 'unconscionable' injury, i.e., injury beyond that which flows naturally (expectation damages) from the non-performance of the unenforceable agreement."  Merex A.C., 29 F.3d at 826 (citing Philo Smith & Co. v. USLIFE Corp., 554 F.2d 34, 36 (2d Cir. 1977) ("The strongly held public policy reflected in New York's Statute of

8

Frauds would be severely undermined if a party could be estopped from asserting it every time a court found that some unfairness would otherwise result.  For this reason, the doctrine of promissory estoppel is properly reserved for that limited class of cases 'where the circumstances are such as to render it unconscionable to deny' the promise upon which the plaintiff has relied.")).

Plaintiff's promissory estoppel claim would fail under any theory, and therefore amending the SAC to add this claim would be futile.  As Defendant correctly notes, "New York does not apply the doctrine of promissory estoppel in the employment context.  A prospective employee, in other words, cannot sue an employer who reneges on a job offer or other employment promise on such a theory."  Shapira v. Charles Schwab & Co., 225 F. Supp. 2d 414, 419 (S.D.N.Y. 2002) (collecting cases).  Kant argues that courts have not consistently applied this rule, and that it should not be used here to bar his claim.  The cases Kant relies on, however, do not involve employment agreements, and are therefore not applicable.[3]

Even if a promissory estoppel claim could be brought in the employment context, however, Plaintiff has failed to allege any facts suggesting that he experienced unconscionable injury.  Columbia's failure to award Kant the position he wanted does not establish unconscionable injury.  See Sea Trade Co. v. FleetBoston Fin. Corp., No. 03

---

[3] See Ellis v. Provident Life & Accident Ins. Co., 3 F. Supp. 2d 339 (S.D.N.Y. 1998) (court held that plaintiff failed to make out a promissory estoppel claim in the context of a commission agreement because "injuries resulting in an employee's decision to forgo other career opportunities do not constitute unconscionable injuries"); Braun v. CMGI, Inc., 64 Fed. Appx. 30 (2d Cir. 2005) (court evaluated promissory estoppel claim in the context of plaintiff's § 1983 equal protection claims); Weinreb v. Hosp. for Joint Diseases Orthopaedic Inst., 404 F.3d 167 (2d Cir. 2005) (involving widow's claim against deceased husband's employer for death benefits).

Civ. 10254 (JFK), 2004 WL 2029399, at *6 (S.D.N.Y. Sept. 9, 2004) (citing Philo Smith & Co. v. USLIFE Corp., 554 F.2d 34, 36 (2d Cir. 1977)) ("If denying the plaintiffs relief would merely result in an unfair result, the denial cannot be deemed to be unconscionable. An injury that flows naturally from the defendant's nonperformance of an unenforceable oral agreement cannot be deemed unconscionable either."); Mobile Data Shred, Inc. v. United Bank of Switz., No. 99 Civ. 10315 (SAS), 2000 WL 351516, at *4 (S.D.N.Y. Apr. 5, 2000) ("To succeed on a promissory estoppel claim in this context, a plaintiff must demonstrate injuries beyond those that flow naturally from the defendant's non-performance or from the plaintiff's continuing performance of the unenforceable agreement. Thus, in the absence of 'egregious' circumstances, courts have consistently rejected promissory estoppel claims when the alleged injuries consisted of lost profits, lost fees, forgone business opportunities or damage to business reputation."); Ellis v. Provident Life & Accident Ins. Co., 3 F. Supp. 2d 399, 411 (S.D.N.Y. 1998) ("[I]t is well established under New York law that injuries resulting in an employee's decision to forgo other career opportunities do not constitute unconscionable injuries.").

Because unconscionable injury is a required element of any promissory estoppel claim, and because Kant has alleged no such injury, amending the SAC to add this claim would be futile, and accordingly the request for leave to amend to add this claim will be denied. See Multi-Juice, S.A. v. Snapple Beverage Corp., No. 02 Civ. 4635, 2006 WL 2683429, at *2 (S.D.N.Y. Sept. 18, 2006) (denying plaintiff's motion for leave to file amended complaint because the proposed promissory estoppel claim was futile absent a showing of unconscionable injury); Marvin, Inc. v. Albstein, 386 F. Supp.

10

2d 247, 255 (S.D.N.Y. 2005) (denying leave to file an amended complaint where plaintiff "has not, and cannot, allege any basis for the promissory estoppel" claim).

### B. Evidence of Bad Faith in New Factual Allegations

Kant's remaining proposed amendments to the SAC consist of revised factual allegations concerning the formation of the alleged oral contract. Defendant argues that "[t]he allegations in the Second Amended Complaint directly conflict with those in [the] Third Amended Complaint such that it is impossible for the allegations in both complaints to be true." Defendant further contends that the proposed amendments are made in bad faith because Kant "blatantly seeks to amend his complaint in order to circumvent Defendant's valid statute of frauds defense." (Def. Reply at 4) After comparing Plaintiff's factual account in the SAC with the allegations set forth in his proposed third amended complaint, the Court agrees that the two accounts cannot be reconciled.

> In the SAC, Plaintiff alleges that Professor Richard Clarida:
>
> . . . promised Kant that subject to the approval of [the] department's senior faculty, he would be appointed to a senior-level full-time position in the department if he attended weekly research seminars regularly and participated in them. The appointment would be initially for one year. During this one year two things will happen: Kant will be considered for tenure, and he will be reappointed for a second term. If he is not granted tenure, he will be notified of this fact by December 15 of his second year of appointment at Columbia.

(Cmplt. ¶ 14) The agreement posited by Kant thus promised him appointment to a senior-level position, followed by consideration for tenure and reappointment for a second year-long term, in exchange for Kant attending and participating in weekly research seminars. By December 15th of Kant's second year at Columbia – almost two

11

years after the oral agreement was allegedly formed in January 2001 – Columbia would give Kant its tenure decision.

The third amended complaint presents a radically different oral agreement that contains no reference to a promise of reappointment for a second year. The proposed third amended complaint alleges that Professor Clarida promised Kant that:

> subject to the approval of [the economic] department's senior faculty, he would be appointed to a senior-level full-time position in the department if he attended weekly research seminars regularly starting from the Spring 2001 semester and participated in them. Soon after this appointment, he will be considered for tenure. The regular participation in seminars, appointment to a senior-level full-time position, consideration for tenure, and decision on tenure will be all completed within one year of the start of the Spring 2001 semester.

(TAC ¶ 12) Absent from Plaintiff's new allegations concerning the alleged oral agreement is any mention of a December 15, 2002 deadline for consideration of Kant for tenure.

The proposed third amended complaint also significantly changes the nature of Professor Davis's alleged promise to Kant:

> During this meeting, Prof. Davis thanked Kant for his attendance and participation in Ph.D. seminars and renewed and restated Prof. Clarida's promises. . . . That is, he promised Kant that subject to the approval of department's senior faculty, he would be appointed to a senior-level full-time position in the department if he attended weekly research seminars regularly starting from the Spring 2002 semester and participated in them. Soon after this appointment, he will be considered for tenure. The regular participation in seminars, appointment to a senior-level full-time position, consideration for tenure, and decision on tenure will be all completed within one year of the start of the Spring 2002 semester.

(TAC ¶ 15; see also id. ¶33)

The new factual allegations in Kant's proposed third amended complaint directly contradict the allegations in the SAC indicating that he would be appointed for two successive one-year terms to a "senior-level full-time position in the department" beginning in January 2001, that he would be considered for tenure, and that he would be notified by December 15, 2002 – "during his second year of appointment at Columbia" – whether he had been granted tenure.  (SAC ¶ 14)  In a clumsy attempt to avoid the statute of frauds, Kant has stripped these allegations from his proposed third amended complaint and substituted a conclusory phrase that the entire process – the appointment, Kant's participation in the weekly research seminars, tenure consideration, and the tenure decision – would "be all completed within one year."  (TAC ¶¶ 12, 15)

Kant's unexplained new recollection concerning this critical aspect of his alleged oral agreement with Columbia officials – first asserted ten months after his original complaint was filed and after Defendant had moved to dismiss under the statute of frauds – strongly suggests bad faith.[4]  Courts are free to consider direct contradictions

---

[4]  The proposed third amended complaint (and the SAC) are also inconsistent with Kant's initial complaint and first amended complaint.  For example, the initial complaint flatly asserts that Clarida "promised Kant that he would be appointed to a tenured position." (Cmplt. ¶ 7).  There is no mention of the need for faculty approval or any other conditions on the tenure promise.  Id.  There is likewise no mention of Prof. Davis or anyone else renewing this agreement in January 2002.  In the first amended complaint ("FAC"), Kant adds that Prof. Davis renewed Clarida's promise in January 2002, and contradicts his earlier assertion concerning tenure, stating that "[t]here was no discussion between Kant and Prof. Clarida on whether this appointment was to be tenured."  (FAC ¶ 12 (emphasis added)); see also FAC ¶ 15 ("Nevertheless, there was still no discussion between Kant and Prof. Davis . . . on whether this appointment was to be tenured.") Despite these clear allegations that tenure was never discussed, in the SAC and proposed third amended complaint, Kant asserts that the Columbia officials promised him not a

between earlier pleadings and a proposed amended pleading in determining whether to grant leave to amend, particularly when the proposed amendments concern facts clearly within the plaintiff's knowledge when previous complaints were filed. See Bymoen v. Herzog, Heine, Geduld, Inc., No. 88 Civ. 1796 (KMW), 1991 WL 95387, at *1 (S.D.N.Y. May 28, 1991) (holding that "where it appears that a plaintiff's purpose in asserting a new claim is his or her anticipation of an adverse ruling on the original claims, the court will deny leave to amend"); Reisner v. General Motors Corp., 511 F. Supp. 1167, 1171-72 (S.D.N.Y. 1981), aff'd, 671 F.2d 91 (2d Cir.), cert. denied, 459 U.S. 858 (1982) (holding that where no new facts were unearthed during discovery that would affect plaintiff's allegations and "[n]o justification for the delay in presenting these new factual allegations and this new theory of recovery [was] given in the plaintiffs' memorandum in support of their motion . . . . the view of the proposed pleading as an attempt to forestall a ruling against the plaintiffs on a motion for summary judgment is not incredible. Such a motivation for a new complaint would clearly justify denial of permission to file it."); see also Wallace v. New York City Dep't of Corrections, No. 95 Civ. 4404 (SJ), 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996) (Where a plaintiff "blatantly changes his statement of the facts in order to respond to the defendant's motion to dismiss," and "directly contradicts the facts set forth in his original complaint [in his amended complaint]," the "court accepts the facts as described in the original complaint as true and concludes that the plaintiff has failed to meet" the legal requirements necessary "to establish the liability of supervisory officials.").

---

tenured position (as alleged in the initial complaint) but instead that he would be considered for tenure. (SAC ¶¶ 14, 17; TAC ¶¶ 12, 15)

Colliton v. Cravath, Swain & Moore LLP, No. 08 Civ. 0400 (NRB), 2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008), is instructive on this point. In that case, a former employee and pro se plaintiff amended his complaint "to include allegations that defendant's abuses continued 'throughout the Employment Period and thereafter, through January 16, 2008,'" but only after the defendant argued, based on the original complaint, that plaintiff's claims were barred by a one-year statute of limitations. Id. at *13. Because plaintiff's "Amended Complaint contradict[ed] his verified original complaint, in a transparent attempt to plead around the legal defenses presented by Cravath in its pre-motion letter to this Court," the court denied leave to amend and held that plaintiff, although proceeding pro se, was subject to Rule 11 sanctions. Id.

## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss Plaintiff's second amended complaint (Docket No. 12) is GRANTED, and Plaintiff's motion for leave to file a third amended complaint (Docket No. 15) is DENIED. The Clerk of the Court is directed to terminate these motions and to close this case. Any other pending motions are moot.

Dated: New York, New York  
March 9, 2010

SO ORDERED.

_____  
Paul G. Gardephe  
United States District Judge

15